**Slip Op. 99-104**

## UNITED STATES COURT OF INTERNATIONAL TRADE

————————————————————————
|  | : |
| --- | --- |
| FERRO UNION, INC. AND ASOMA CORPORATION, | : |
|  | : |
| Plaintiffs, | : |
|  | : |
| v. | : Court No. 97-11-01973 |
|  | : |
| THE UNITED STATES, | : Public Version |
|  | : |
| Defendant, | : |
|  | : |
| and | : |
|  | : |
| WHEATLAND TUBE COMPANY, | : |
|  | : |
| Defendant-Intervenor. | : |
————————————————————————

[Commerce remand determination affirmed.]

Dated: October 6, 1999

Mayer, Brown & Platt (Simeon M. Kriesberg, Carol J. Bilzi, and Peter C. Choharis) for plaintiffs.

David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Michele D. Lynch), Brian Peck, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

Schagrin Associates (Roger B. Schagrin and Alexander H. Schaefer) for defendant-intervenor.

#### OPINION

**RESTANI, Judge:** On March 23, 1999, the court remanded the final results of the Department of Commerce, International Trade Administration ("Commerce" or "the Department") in Certain Welded

Carbon Steel Pipes and Tubes from Thailand, 62 Fed. Reg. 53,808 (Dep't Commerce 1997) (final results of antidumping admin. rev.) [hereinafter "Final Results"].  See Ferro Union, Inc. v. United States, 44 F. Supp.2d 1310 (Ct. Int'l Trade 1999).[1]

The case principally concerned whether Commerce properly applied the standard of affiliated parties, pursuant to 19 U.S.C. § 1677(33) (1994), in concluding that Saha Thai was affiliated with several companies based on common control by various family groupings.  The court affirmed Commerce's interpretation of the term "family" pursuant to 19 U.S.C. § 1677(33)(A), although it found that Commerce had provided insufficient guidance as to the full ramifications of its interpretation of the term, specifically, that more distantly related family members than those listed in the statute were to be included.  The court also instructed Commerce to revisit other factual determinations.

Commerce issued its remand determination on July 6, 1999. See Remand Determination: Ferro Union, Inc. and Asoma Corporation v. United States, Court No. 97-11-01973 [hereinafter "Remand Results" or "RR"].

### Standard of Review

In reviewing final determinations in antidumping duty

---

[1]     Familiarity with the court's earlier opinion is presumed.

investigations, the court will hold unlawful those agency determinations which are unsupported by substantial evidence on the record, or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i) (1994).

### Background

In the Final Results, Commerce found that Saha Thai had significantly impeded the review by failing to disclose affiliations with two producers, Thai Tube and Thai Hong, as well as affiliations with three home market customers (Companies A, B, and C), and two members of the Siam Steel Group (Companies D and E).[2]  62 Fed. Reg. at 53,809.  Commerce found that Saha Thai was affiliated with these companies based on common control by family groupings, pursuant to 19 U.S.C. § 1677(33)(F).

Commerce concluded that Thai Tube/Hong was affiliated with Saha Thai because Saha Thai's Deputy Managing Director, Somchai Lamatipanont, is the uncle of Thai Tube/Hong's directors and principal shareholders.  Final Results, 62 Fed. Reg. at 53,813. The court found that Commerce's interpretation of "family" as stated in 19 U.S.C. § 1677(33)(A), was reasonable, although Saha Thai had insufficient notice that uncles and nephews were to be

_____

[2]     The identities of these companies are stated in the court's confidential version of Ferro Union, and in Commerce's Remand Results.

considered "family" for purposes of affiliation.  The court therefore ordered that, on remand, Commerce was to ignore the possible affiliation with Thai Tube/Hong for purposes of determining whether total adverse facts available could be applied to Saha Thai.  Ferro Union, 44 F. Supp.2d at 1332.  The court directed Commerce to determine whether an application of adverse facts was warranted without considering these two companies.  Id.

Commerce found that Saha Thai was affiliated with Companies A, B, and C, through common control by family groupings.  Final Results, 62 Fed. Reg. at 53,810.  Commerce also found that Saha Thai was affiliated with the members of the Siam Steel Group, including Company D, a home market customer, and Company E, a steel pipe producer.  Id. at 53,816.  It was unclear to the court how Commerce defined these families, so it directed Commerce to "inform itself of the nature of the relationships among these people in order to assure itself that it has properly determined that the persons involved are family members as contemplated by the statute."  Ferro Union, 44 F. Supp.2d at 1326.  Because Commerce considered Saha Thai's failure to disclose these companies as further justification for its application of total adverse facts, the court also directed Commerce to assure itself

"that the affected companies should have been identified by Saha

Thai."  Id.

The court found that Commerce had not properly followed the

statutory framework for applying total adverse facts available in

its Final Results.  See Ferro Union, 44 F. Supp.2d at 1328-1331.

Pursuant to the statute, Commerce shall use "facts otherwise

available" if:

> (1) necessary information is not available on the record, or
> (2) an interested party or any other person –
> > (A) withholds information that has been requested by the administering authority or the Commission under this subtitle,
> > (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections(c)(1) and (e) of section 1677m of this title,
> > (C) significantly impedes a proceeding under this subtitle, or
> > (D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title . . .

19 U.S.C. § 1677e(a).  In order to make an adverse inference,

Commerce must make the additional finding required by 19 U.S.C. §

1677e(b) that the party has "failed to cooperate by not acting to

the best of its ability."  The court found that, "Commerce is

obliged to explain why it concluded that a party failed to comply

to the best of its ability prior to applying adverse facts, and

it did not do so here."  Ferro Union, 44 F. Supp.2d at 1331.

"[Commerce] will decide whether it adequately defined affiliates

for the purpose of identification of Companies A, B, C, D, and E, whether lack of identification of these companies impeded the investigation, and whether adverse facts are warranted based on failure to act to the best of ability, given the development of the law and the facts of this case." Id. at 1332.

In the original Final Results, Commerce chose 29.89 percent as the applicable total adverse facts available dumping margin. In its remand determination, Commerce concluded that an application of total adverse facts available was not warranted. Commerce stated that the issue of whether to collapse Thai Tube and Thai Hong into Saha Thai affected all sections of the questionnaire, whereas once Thai Tube and Thai Hong are disregarded, Commerce no longer found the use of total adverse facts available warranted. RR, at 3-4. Commerce stated that it continues to believe that the use of total adverse facts available was warranted, but only if Thai Tube and Thai Hong are taken into account.[3] Id. at 4.

---

[3] In an attempt to justify its original determination to apply total adverse facts based on Saha Thai's failure to identify Thai Tube and Thai Hong, Commerce states an improper interpretation of 19 U.S.C. § 1677e. Commerce stated that "to impede a review is to obstruct its progress. If a party has obstructed a proceeding, it cannot have cooperated to the best of its ability." Remand Results, at 4. Commerce's reading does not properly recognize the distinction between § 1677e(a)(2)(C), invoking facts available when a party significantly impedes an
                                                                (continued...)

**Home market resellers**

Commerce found that the absence of information on Companies A, B, and C (collectively "home market resellers")[4] and the affiliation with the Siam Steel Group only affected the home market sales database.  RR, at 5.  The absence of this information affected Commerce's ability to determine "whether the home market sales database was complete or whether downstream sales made by these resellers were necessary."  RR, at 3.  Commerce considered whether it was appropriate to use the remainder of Saha Thai's questionnaire response, in accordance

---

[3](...continued)
investigation, and § 1677e(b), which provides for the use of an adverse inference in selecting the specific available facts, when a party fails to cooperate by not acting to the best of its ability.

The court noted in Ferro Union, that a "respondent could impede a review without intending to do so, for example, because it did not understand the questions asked.  The statute requires an additional finding under Section 1677e(b) that a respondent could have complied, and failed to do so."  44 F. Supp.2d at 1330 n.44.  If Commerce meant by its finding of "significantly impeding" a failure to cooperate to the best of ability, it was required to say so.

[4]     In Commerce's preliminary and final results, only Companies A and B were identified as home market customers and resellers.  Saha Thai placed information on the record prior to the issuance of the Final Results identifying Company C as a home market reseller as well.  Commerce incorporated this information into its remand analysis and referred to all three companies as home market customers and resellers.  RR, at 7 n.3.

with 19 U.S.C. § 1677m(e) (1994),[5] and found that the bulk of Saha Thai's information was usable.  RR, at 5.

Commerce stated that its initial determination that Saha Thai had "significantly impeded" the review, pursuant to 19 U.S.C. § 1677e(a)(2)(C) was "largely based" on the finding that Saha Thai did not disclose information regarding Thai Tube and Thai Hong.  Excluding Thai Tube and Thai Hong from the analysis, Commerce stated that it "no longer [found] it necessary to conclude that Saha Thai . . . significantly impeded the review."  RR, at 6.  Commerce maintained the finding that Saha Thai was affiliated with Companies A, B, and C, and concluded that Saha Thai failed to provide complete information on these home market resellers in a timely fashion, pursuant to 19 U.S.C. §

_____

[5]      Section 1677m(e) provides in relevant part:

[Commerce] . . . shall not decline to consider information that is submitted by an interested party and is necessary to the determination but does not meet all the applicable requirements established by the administering authority . . ., if –
        (1) the information is submitted by the deadline established for its submission,
        (2) the information can be verified,
        (3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,
        (4) the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by the administering authority . . . with respect to the information, and
        (5) the information can be used without undue difficulties.

1677e(a)(2)(B), thereby justifying the use of facts otherwise available.  Commerce also found an adverse inference was warranted, pursuant to § 1677e(b), because Saha Thai failed to comply to the best of its ability in its responses regarding these home market resellers.  RR, at 6.

Upon an examination of the record evidence, Commerce found that each family it identified as a control group consisted of persons explicitly listed in § 1677(33)(A),[6] and that therefore Saha Thai should have known from the statutory definition of family that these companies were potential affiliates.[7]  RR, at 13.  Commerce found that Saha Thai should have identified these companies because the initial questionnaire asked Saha Thai to

---

[6]     The section defines members of a family as "including brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants."  19 U.S.C. § 1677(33)(A).

[7]     Specifically, the Sae Heng/Ratanasirivilai family, which controls Company A, consists of Kim Hua Sae Heng (Saha Thai's Financial Director), his wife and children.  RR, at 9. The Lamatipanont family, which controls Company B, consists of Somchai Lamatipanont (Saha Thai's Deputy Managing Director), his wife and children.  Id. at 10.  The Ampapankit family, which controls Company C, consists of Limsiam Ampapankit (Saha Thai's Chairman of the Board of Directors), and his [   ].  Id. at 11. Commerce ignored the other Saha Thai shareholders with the surname Ampapankit because it could not identify their family relationship.
The names of these families have various spellings in the record and in Commerce's Remand Results.  The court continues to use the spelling it used in Ferro Union.

list all affiliated companies, and included a glossary of terms
which set forth the definition of affiliated persons under §
1677(33).  Commerce emphasized that findings of affiliation based
on family relationships pre-dated the URAA, and had been upheld
by this court.  See Ferro Union, 44 F. Supp.2d at 1327
(discussing affiliation finding based on family relationship in
Queen's Flowers de Colombia v. United States, 981 F. Supp. 617
(Ct. Int'l Trade 1997)).  Moreover, Commerce concluded that Saha
Thai had sufficient notice of the need to list the home market
resellers as affiliates because "[e]ach of the family groups that
had control over both Saha Thai and one of the home market
resellers was composed of individuals expressly included within
[19 U.S.C. § 1677(33)(A)]."  RR, at 13.

Saha Thai had identified members of the Siam Steel Group as
potential affiliates, based on common management.  Proprietary
Questionnaire Responses (July 16, 1996), 6-7, C.R. Doc. 2, Def.'s
App., Ex. 4, at 8-9.  Commerce found that "by its own response,
Saha Thai acknowledged that it should report affiliates on the
basis of common ownership and management control by a family
group."  RR, at 13.  Commerce found that Saha Thai's failure to
report the three resellers was deliberate.[8]  Id. at 13-14.

---

[8]     Commerce disagrees that knowing failure is required
                                                    (continued...)

The failure to report the companies was of significance because Commerce did not have time to request that Saha Thai provide information regarding downstream sales of Saha Thai merchandise by the home market resellers, and Commerce was thus unable to compile a complete home market sales database. RR, at 14. Commerce needed to know whether the sales to the affiliated resellers were at arm's-length in order to determine whether the sales should be included in the calculation of normal value ("NV"). See 19 U.S.C. § 1677b(a)(5) (1994) ("If the foreign like product is sold . . . through an affiliated party, the prices at which the foreign like product is sold . . . by such affiliated party may be used in determining normal value.")

Commerce compared the weight-averaged affiliated and unaffiliated net prices by customer and product, and found that two of the home market resellers failed the arm's-length test. RR, at 14. Commerce did not have information regarding the sales prices of these companies, and therefore found that it did not have a complete home market sales database from which to calculate NV. Id. at 14-15. Commerce then decided to "make an inference adverse to the interests of Saha Thai in applying facts

---

⁸(...continued)
under 19 U.S.C. § 1677e(b). Whether some type of negligence will suffice was not at issue in this case.

available with respect to home market sales by these affiliated resellers." Id. at 15. For the companies which failed the arm's-length test, Commerce retained Saha Thai's sales to these customers in the home market sales database and "assigned to them the highest net price by product control number as adverse partial facts available." Id.

**Siam Steel Group**

In the Final Results, Commerce found that Saha Thai was also affiliated with Companies D and E, members of the Siam Steel Group. 62 Fed. Reg. at 53,816. Upon re-examination, Commerce continued to find that these companies are affiliated with Saha Thai and that Saha Thai did not adequately respond to Commerce's questions regarding affiliates. Commerce, however, did not find upon remand that Saha Thai's failure to identify Companies D and E was of significance, and decided that an application of partial adverse facts available was unnecessary. RR, at 19. Although Commerce stated that the NV calculation was affected by the absence of Companies D and E, it was only affected to a small extent. On remand, Commerce "made the necessary modifications to Saha Thai's reported data so that sales to Siam Steel Group companies which were also Saha Thai end-user customers [were] treated as sales to affiliated customers for purposes of

conducting Commerce's standard arm's-length test."[9]  Id.  Because none of the Siam Steel Group companies are resellers of Saha Thai merchandise, Commerce concluded that downstream sales were not at issue.  Id.

Applying partial adverse facts available to the home market sales database for the failure to identify the home market resellers, Commerce calculated a revised dumping margin of 9.52 percent.  RR, at 41.  Because a complete substitute margin was not selected, plaintiffs no longer raise the issue of corroboration of a margin based on secondary data under 19 U.S.C. § 1677e(c).

### Discussion

Plaintiffs, Ferro Union, Inc. and Asoma Corp. (collectively "Ferro"), find that Commerce's remand determination is "substantially closer than were the Final Results to a determination in accordance with the law and the record evidence."  Pls.' Comments at 1.  Ferro disagrees with Commerce's application of partial adverse facts, but states that it does not wish to expend further resources on another remand, and therefore urges the court to affirm the Remand Results.  Ferro nevertheless

---

[9]    Pursuant to this calculation, [  ] of the affiliated home market end-user customers failed the arm's-length test, [ ]. Sales to [  ] were excluded from Commerce's analysis for the remand determination.  RR, at 19.

makes three arguments regarding why Commerce's application of partial adverse facts was unlawful.  Plaintiffs cannot have it both ways: urging the court to affirm, but nevertheless asking the court to find that Commerce's remand results contain errors. The court finds that by asking the court to affirm the Remand Results, Ferro has waived its right to raise further issues.  The court will not, therefore, consider the alleged failures regarding the application of partial adverse facts which Ferro sets forth in its comments.[10]

Defendant-Intervenor, Wheatland Tube Company, argues that Commerce should have applied total adverse facts available to Saha Thai on remand, even without considering Saha Thai's failure

---

[10]    Ferro argues that Commerce should not have applied partial adverse facts because Saha Thai is not affiliated with Companies A, B, and C on the grounds that Commerce failed to show how the families were in a position to control Saha Thai's decisions regarding pricing, production, or cost.  See 19 C.F.R. § 351.102(b) (1999) ("[Commerce] will not find that control exists . . . unless the relationship has the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise or foreign like product.").
Ferro also states that Saha Thai could not have known from Commerce's questionnaires that it was to consider Companies A, B and C potential affiliates, and that therefore, the failure to report these companies was not "deliberate."  See Ferro Union, 44 F. Supp.2d at 1331 ("In order to apply adverse facts available, Commerce must . . . conclude that Saha Thai knew that Companies A, B, C . . . could be considered affiliates and deliberately chose not to disclose them as such.").
Lastly, Ferro states that Commerce failed to check that Saha Thai's sales to Companies A and B were in the ordinary course of trade.

to list Thai Tube and Thai Hong as affiliates.  Wheatland states
that Commerce's finding that Saha Thai failed to provide complete
information on affiliations with Companies A, B, and C, and that
the failure was deliberate, warrants an application of total
adverse facts.  Def.-Intervenor's Comments at 3-4.  Other than
this alleged error, however, Wheatland states that Commerce's
remand results are supported by substantial evidence and are in
accordance with law.

The only issue on which any party arguably seeks a second
remand is whether Commerce's application of partial adverse
facts, instead of total adverse facts available, was correct.[11]
The court, therefore, need only address this question.

Wheatland contends that the court's instruction that
Commerce ignore Saha Thai's failure to report a potential
affiliation with Thai Tube and Thai Hong was in error,[12] but that

---

[11]    Although Wheatland asserts that a margin based on total
adverse facts available should have been applied by Commerce, it
is unclear whether Wheatland is seeking a second remand, or
asking the court to impose an alternative margin.  The court
assumes remand is sought on this limited issue.

[12]    Wheatland states that the court's reasoning in <u>Ferro
Union</u> is flawed because it stated that the "plain meaning" of
family includes uncles and nephews, but concluded that Saha Thai
did not have notice that "family" encompassed this relationship.
<u>See</u> <u>Ferro Union</u>, 44 F. Supp.2d at 1325-26.  Wheatland ignores the
context of the court's statement.  The court did not find that
the meaning of "family" was explicit in the statute, and found it
                                                    (continued...)

even without considering Saha Thai's failure to report these two companies, an application of total adverse facts available is required in this case.

Wheatland emphasizes that Commerce found that Saha Thai failed to provide complete information concerning its affiliation with Companies A, B, and C, failed to report their downstream sales, and that therefore, information necessary for an accurate margin calculation was not on the record. Def.-Intervenor's Comments at 3. Commerce also found the failure to report these affiliations was deliberate, and merited an application of adverse inferences. See RR, at 13-14. Wheatland contends that the data was so deficient that it precluded "any remotely accurate calculation of normal value" and that Commerce's application of "adverse partial facts available fails to recognize the extent to which the home market sales database was

---

[12](...continued)
necessary to determine, pursuant to Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), whether Commerce's construction of affiliates was permissible. See Ferro Union, 44 F. Supp.2d at 1324.

The court found that the agency's interpretation of family was a permissible construction of the statute, not that the statute was clear on its face. Therefore, it was not inconsistent for the court to conclude that Commerce's interpretation of "family" was reasonable, but that Commerce failed to place Saha Thai on notice that it would construe family to encompass more relationships than those listed in the statute.

compromised by the fact that no downstream sales information was ever collected." Def.-Intervenor's Comments at 4. Wheatland stresses that in its view, Saha Thai refused to cooperate, and that the application of total adverse facts available was warranted. Wheatland does not propose, however, that the 29.89 percent margin originally applied in the Final Results should be the total facts available margin. Rather, Wheatland proposes a margin of 17.28 percent, the highest calculated margin applied to Saha Thai in a previous less than fair value investigation. See Certain Circular Welded Carbon Steel Pipes and Tubes from Thailand, 61 Fed. Reg. 18,375, 18,376 (Dep't Commerce 1996) (amended final results).

Commerce agreed with Wheatland that Saha Thai failed to provide complete responses to the Department's requests for information on affiliates. Remand Results, at 27. The Department found, however, that "applying partial adverse facts available adequately addresses this deficiency." Id. at 28. The majority of Saha Thai's reported sales in the home market database did not fail Commerce's arm's-length test and were "usable and unaffected by Saha Thai's reporting errors."[13] Id.

---

[13] Sales to the resellers which failed Commerce's arm's-length test made up only [ ] percent of the home market sales database. Remand Results, at 28.

The Department stated that its NV calculation was based on an "imperfectly reported database," but found that these deficiencies were addressed by the use of partial adverse facts available.  Id.

The court finds Wheatland's arguments that there were "gross deficiencies" in the information submitted unconvincing. Commerce properly followed the court's remand instructions regarding whether the failure to identify Companies A, B, and C warranted an application of adverse facts available.  Commerce defined the families at issue and found that these families controlled Saha Thai.[14]  Commerce then determined the significance of this failure by Saha Thai, and found that it only affected the home market sales database.  Because Commerce found that Saha Thai had an understanding of what types of relationships could constitute affiliation pursuant to 19 U.S.C. § 1677(33), based on Saha Thai's admission that the Siam Steel Group was a "potential affiliate," Commerce determined that Saha Thai failed to act to the best of ability, and that an adverse inference was appropriate in accordance with 19 U.S.C. § 1677e(b).  Commerce found, however, that this deficiency was

---

[14]    The court notes again that although Ferro tries to argue that these families did not, in fact, control Saha Thai, Ferro waived this argument by asking the court to affirm the remand results in their entirety.

limited in scope, and therefore addressed the deficiency by applying adverse facts to a portion of the information and calculating a margin based on Saha Thai's own information.  The Department resorted to partial adverse facts in order to correct a situation where the information was usable, albeit incomplete.

Commerce's decision to use information submitted by Saha Thai accords with Commerce's statutory responsibility pursuant to 19 U.S.C. § 1677m(e), to use a party's information even if it is incomplete.  As Commerce clarified in the Remand Results, the "partial use of facts available in the calculation of normal value does not . . . compromise the U.S. sales data; it affects the results of the sales comparisons.  This is a normal consequence of the use of partial adverse facts available." Remand Results, at 28.  Moreover, the information Commerce used on remand was verified, and all parties agree that if the application of partial adverse facts was lawful, the information Commerce chose to use was proper.  See Pls.' Comments at 9-10; Def.-Intervenor Resp. at 1.

Under the former statute any deliberate failure to cooperate could warrant full adverse treatment because a party may not pick and choose among the information it is requested to submit.  See Ad Hoc Comm. of AZ-NM-TX-FL Producers of Gray Portland Cement v.

United States, 18 CIT 906, 915, 865 F. Supp. 857, 865 (1994).[15]
The court need not decide whether such treatment would be
permissible under the new statute based on these facts.  The
court finds that Commerce's selection of partial adverse facts,
instead of total adverse facts, was a reasonable choice.  See
Toyota Motor Sales, U.S.A., Inc. v. United States, 15 F. Supp.2d
872, 882 (Ct. Int'l Trade 1998) (upholding Commerce's
determination to apply partial adverse facts available).  The
facts available statute is designed to reach a reliable margin,
even in the face of an uncooperative respondent.  See 19 U.S.C. §
1677e(c) (when relying on secondary information, Commerce "shall,
to the extent practicable, corroborate that information from
independent sources . . . reasonably at [its] disposal.").

Commerce's approach here furthers the purpose of achieving a
reliable and accurate margin, because it recognizes that Saha
Thai only failed to provide information in one respect (the
information pertaining to the home market resellers).  It also

---

[15]     As explained in Ad Hoc, under the old BIA standard,
generally Commerce resorted to "total BIA" for a "respondent
whose reporting or verification failure is so extensive as to
make its entire response unreliable."  Ad Hoc, 18 CIT at 915
n.21.  The choice of the particular total BIA rate then depended
on the respondent's level of cooperation.  Commerce would apply
"partial BIA" when the respondent's information was deficient in
limited respect, but Commerce did not consider a respondent's
level of cooperation in the application of partial BIA.  Id.

furthers the goal of accuracy because Commerce used Saha Thai's own information, which is more likely to be an accurate reflection of the company's sales than other information.  By retaining the sales to Companies A and B in the home market sales database and assigning to them the highest net price by product control number, Commerce also preserved an adverse consequence for Saha Thai's failure to provide information on these home market resellers.  The court therefore upholds Commerce's application of partial adverse facts as in accordance with law and supported by substantial evidence.


    Accordingly, the court affirms the <u>Remand Results</u> addressed herein.


                         _____

                            Jane A. Restani
                                Judge


Dated: New York, New York

    This 6th day of October 1999.